In the matter of the Partition of Real Estate of John P. Cochran, deceased.

*New Castle, Feb. 28, 1913.*

In a proceeding by devisees to partition real estate, an intervention by heirs of the deceased, claiming an interest therein, and raising a purely legal question on undisputed facts, may be allowed, and their claims therein adjudicated.

Under a devise to a widow for life, and then over to such of testator's children "as may survive" him and "the issue of such as have died" in his lifetime, such issue to take the share the parent would have taken if living, the issue of a child dying before the will would take a substantive. and original gift, and not a substitutional gift granted on the prior gift to the parent.

Testator devised a certain lot of land, on which he had intended to build a house, to his wife, and at her death, to such of his children as might survive him and the issue of such as might have died in his lifetime, such issue taking by representation, and after the purchase of a lot having a house thereon he executed a codicil in lieu of such provision, devising the lot to the wife for life and over to such of his children as might survive him, the issue of any children who should be dead taking the share the parent would have taken if living. At the date of the will and of the codicil, a son of testator was dead, leaving children, and it appeared in the will that the testator knew of the death of his son. *Held*, that while gifts of substitution are permitted to children of legatees who are dead at the date of the will, distinctly on the ground that such legatees took by name and not as a class, that a reference to a class cannot be held to include in it persons deceased, and that as the deceased son never came within the class, intervenors could not take by substitution.

As between a rule which supports the natural meaning of the words and one which imports an artificial meaning, the former should be chosen.

If in a proceeding for partition there be an intervention raising a question of law on undisputed facts, the proceeding will not be stayed until the dispute be adjudicated elsewhere, but the dispute will be settled by a court in partition proceeding.

PETITION FOR INTERVENTION IN A CAUSE IN PARTITION. A petition for partition of land late of John P. Cochran, deceased, had been filed by all the parties in interest, devisees

under the will of John P. Cochran, and a commission appointed to make the partition. John P. Cochran being seized of a lot of land in Middletown, by the codicil to his will, made the following devise:

"I give, devise and bequeath to my said wife, Mary T. Cochran, the said house and lot of land so purchased from John W. Patton, to have and to hold for and during the term of her natural life, and at and upon her death, I give, devise and bequeath the same unto such of my children as may survive me, and if any of my said children shall be dead, leaving a child or children, then to such child or children, he, she, or they taking the share their parent would have taken if living, and it is my will and I do direct that the interests of any of the persons to be benefited by this devise shall be held by the same trustees and subject to the same trusts as are set forth and provided in my said will in regard to other devises made for their benefit respectively."

At the death of the testator, John P. Cochran, on December 27, 1898, there were living his wife (who died June 26, 1912) and five of his children. Two of these five children died during the life of the widow, and their devisees or heirs were parties to the petition, the three children of the testator who survived the widow being the other parties. At the date of the will of John P. Cochran, a sixth child of his, viz., John Cochran, was dead, leaving four children, and one of the four afterwards died. The remaining three children of John Cochran filed a petition claiming that they together took one-sixth of the land, as issue of their father, and prayed to be allowed to intervene in and be made parties to the partition cause and be adjudged to be entitled to an interest in the land; or that partition be refused until the title of the petitioners be established at law.

By the third item of the will of John P. Cochran he gave to his wife a certain other lot of land for life and then, as to that land, provided in the same item, as follows.

"And at her death unto such of my children as may survive me, and the issue of such as may have died in my lifetime, such issue taking the share their parent would have taken if living."

It also appeared in the will that the testator intended to erect on the land last mentioned a dwelling house. By the

first codicil (the material part whereof is quoted above), the testator stated in effect that since making his will he had bought from Patton another lot of land having thereon a dwelling house, and revoked the provision in the third item and in his first codicil made in lieu thereof the provision for his wife first above quoted, under which the original petitioners for partition claimed. It distinctly appeared in the will that the testator knew that his son, John Cochran, was dead at the date of the will and codicil, and had left children who survived him and were alive at those dates, and the testator made some definite and separate provision in his will for such children of John Cochran. It also appeared that in making gifts to and for the benefit of some others of the children of the testator, living at the date of the will, he provided that in case certain defaults should happen respecting certain gifts of particular property, such property should go "unto my own right heirs forever," which last mentioned language would include the intervenors, who were right heirs of the testator.

The original petitioners filed an answer to the petition for intervention, denying the title of the intervenors, but interposed no objection to their being made parties on the record if the Chancellor should be of the opinion that they are entitled to the shares in the real estate which they claim.

Argument was had not only as to the right to intervene, but also as to the merits of the claim of the intervenors to shares in the land.

*William S. Hilles*, for the intervening petitioners.
*John H. Rodney*, for the original petitioners.

THE CHANCELLOR. The first question raised is whether the intervention will be allowed and the claims of the intervenors be adjudicated in this way. There is no statute bearing on the subject. If the intervenors have an interest in the land to be partitioned and are not made parties, they are not affected by the partition. But it is manifestly proper that the question as to their rights be settled promptly in the way adopted, for the question raised is purely a legal one and the facts are

undisputed; and all parties, intervenors as well as the original petitioners, would be bound by the decision of the question, subject, of course, to a review by an appeal. Indeed, there are several cases of record in this court in this county, where such petitions for intervention were considered and allowed.

In the proceeding *In re Ebenezer Rothwell*, in 1819, a purchaser of the shares of two of the tenants in common was allowed to intervene. In 1856, in the case of *Charles Warner v. Hunn Jenkins*, the petition was amended by adding certain *cestuis que trust* as parties. Later, in 1871, *In the Matter of Real Estate of John McGranra*, one John McGranra, who was not an original party in the partition proceeding, made a petition in the case after the sale, claiming an interest and asking to be made a party and be given a share of the proceeds. Thereupon a rule issued to the other parties, testimony was heard by the Chancellor and an order made declaring the petitioner to be a party entitled to a share of the proceeds of sale.

The main question, however, is whether the intervenors have any interest in the land. At the time the will and codicil were executed the testator had five children living. One child, John Cochran, was then dead leaving children then living. Provision had been made for these children of John, and it appears affirmatively and definitely in the will that he then knew of the death of John and that John had left children. The intention of the testator, to be gathered from the whole will, is to control. Regard must be had then to the third item of the will in connection with the first codicil, the one under which the intervenors claim. The evident purpose of each of these provisions is to provide a home for his widow for her life. But the language of the gift of the remainder is quite different in the two clauses. It was urged by the solicitor for the children of John Cochran that under the third item of the will they would probably be excluded from participation. But the law is otherwise. If there be a gift to the children of A. living at a given period and the issue of such children of A. as shall have died before that period, and A. had a child who was dead at the date of the will, the issue of that child would be entitled. There is a substantive and original gift to the

issue, and not a substitutional gift grafted on the prior gift to the parent. *Hawkins on Wills*, *249. So a gift "to such of my children as may survive me and the issue of such as have died in my lifetime" is an independent gift to the issue; and the children of a son of the testator, dead at the date of the will, would have taken directly and independent of the parent, and not by way of sustitution for the parent, who never could take. The matter is thus stated in *Hawkins on Wills*, *249:

"Thus under a bequest to the children of A. at a given period, and the issue of such children of A. as shall have died before that period, the issue of a child of A. who may have died in the testator's lifetime, or who may have been dead at the date of the will, are entitled; the gift to issue involving no condition as to the time of death of the parent or ancestor."

In support of this the learned author cites *Coulthrust v. Carter*, 15 *Beav.* 421; *Rust v. Baker*, 8 *Sim.* 443; *Loring v. Thomas*, 1 *Dr. & Sm.* 497. See, also, *Atwood v. Alford L. R.* 2 *Eq.* 479: *Wheeler v. Allen*, 54 *Me.* 232.

Under the third item, then, the five children of the testator, living at his death, would each have taken a vested remainder in one-sixth of the land, and the children of John Cochran would have taken together a vested remainder in one-sixth of the land. The class of devisees in remainder consisted both of children and grandchildren, the latter taking an original and independent gift and not in substitution for their parents.

After revoking that provision in the third item, the testator by codicil made another gift of other property bought for the same purpose, and used in the codicil entirely different language. Beyond doubt the natural and literal meaning of the codicil is such as to exclude the intervenors. The word "said" has a direct reference to a class of persons which the testator had created by the words immediately preceding, viz: "Such of my children as may survive me." They constitute the original class, and the share of any of that class who died in the life of the life tenant was given to the children of the one so dying, the members of this substituted class to take among them the share or shares which their parent or

parents would have taken if they survived the testator.   This
view is further strengthened by the words "shall be dead."
The natural significance of these words is not dead at the date of
the codicil, but dead at some future time.   Again, they may
mean dead at a time other than the date of the codicil, for the
testator then knew that his son John was dead.   Again, by the
use of the word "if," the testator referred not to his son John,
but to some one else, viz: such of his children as were alive
when the codicil was made and who might die thereafter in
the testator's lifetime.   If he had intended to surely include the
children of his deceased son John, he would have again used
the language used in the third paragraph of the original will
respecting the other land.

There are cases, however, which hold that words such as,
"shall die," or "shall happen to die," used in such like cases
do not necessarily point to a future death, so as to exclude the
issue of a child who may have died before the date of the will.

"Though according to strict construction, importing futurity
those words might have been understood as speaking of the
event at whatever time it may happen."   *Hawkins on Wills*,
*249; *Loring v. Thomas*, 1 *Dr. & Sm.* 497; *Christopherson v. Nay-
lor*, 1 Mer. 320.   It may be, therefore, that these words, "shall
be dead," do not control the devise.

In support of the natural and literal meaning above re-
ferred to of the words of the codicil there are decisions of
weight, and they uphold the proposition that one cannot take
by way of substitution when the person for whom he claims to be
substituted never could by any possibility have been an origi-
nal legatee.   The case of *Christopherson v. Naylor*, 1 *Mer*. 320,
is one of the cases most cited to support this.   There, there was a
bequest "to each and every child and children of my brother
and sisters, A., B., C. and D., which shall be living at my
decease, * * *.   'But if any child or children of my said brother
and sisters, or any of them   *   *   *   shall happen to die in
my lifetime and leave any issue   *   *   *'   then the
legacy or legacies hereby intended for such child or
children so dying shall be upon trust for, and I give and
bequeath the same to his, her, or their issue."   It was held

that the children of those nephews and nieces who were dead at the making of the will were not included in the gift. The court said:

"The nephews and nieces are, here, the primary legatees. Nothing whatever is given to their issue, except in the way of substitution. In order to claim, therefore, under the will, these substituted legatees must point out the original legatees in whose place they demand to stand. But, of the nephews and nieces of the testator, none could have taken besides those who were living at the date of the will. The issue of those who were dead at that time can, consequently, show no object of substitution; and to give them the original legacies would be, in effect, to make a new will for the testator."

Where a testator refers to a class he cannot be held to have intended to include in it dead persons. *Growling v. Thompson, L. R. 11 Eq. 365, note; Grover v. Musther, L. R. 43 Ch. Div. 569* (1889). Gifts by substitution are permitted to children of legatees who were dead at the date of the will, but distinctly on the ground that such legatees took by name and not as a class. It is otherwise if the original gift is to a class which is not determinable until the death of the testator, such as a gift to such of his children as shall survive the testator. In the case of a substitutionary gift to children or issue of persons indicated by a general description, the rule is that only the children or issue of the persons answering to the description at the date of the will can take the benefit.

Applying these principles to the will under consideration here, the children of John Cochran can only take by substitution for him, and as he could by no possibility have taken under the will, because he never came within the class, being dead at the date of the will, his children could not be substituted for him. As Lindley, J., said in *Grover v. Musther, supra*, little assistance is to be gained from the cases in construing a will, for they rather confuse than assist. But while there are cases which hold otherwise, the case of *Christopherson v. Naylor,* and the principle there established, stands firmly established in England. That case has been criticised, favored, disapproved, and followed in the many cases where cited. It is unnecessary to review all the cases cited by counsel, for they

cannot be reconciled. There are, however, some cases cited on behalf of the children of John Cochran which strongly support their claim. These cases find in words substantially similar to those in the codicil here an intention to provide for grandchildren by a child deceased at the date of the will, as well as for grandchildren by a child then living, but which may thereafter die; and according to those cases the testator is presumed to have as much affection and consideration for the one class of grandchildren as the other. But as between a rule which supports the natural meaning of the words, and one which imports an artificial meaning, one should choose the former.

In conclusion, then, it is clear that the testator having by his will made a gift by form of words which would surely have included the children of John Cochran, afterwards by a codicil revoked that gift and made in place thereof another gift in another form of words; that the literal and natural effect of the codicil was to exclude such children of John; and that at least by the weight of authority of other courts in like cases, this interpretation is based on a logical rule. Standing alone, the words of the codicil might be subject to two meanings; but taken in connection with the provision of the will revoked thereby, it is clear that there can be no other reason for a change of words than a change of purpose, and the literal and natural meaning of the words will be adopted, when there is a conflict of opinion among courts which have sought to interpret words of similar import.

Inasmuch as the children of John Cochran have no right or interest in the property to be partitioned, they will not be allowed to intervene. The suggestion that the proceeding for partition be stayed until the dispute as to the title be adjudicated elsewhere does not meet with approval. A legal question based on undisputed facts has been properly raised in a tribunal competent to decide it, and it is not ignoring or trespassing on the functions and powers of other courts for this court to decide the question. The petition for intervention will be denied and a commission will be appointed to make partition among the original petitioners.

Let an order be entered accordingly.