# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF THE TRUST | ) | |
| UNDER THE WILL OF ELIZABETH | ) | |
| WILLIAMS VALE FOR THE BENEFIT | ) | C.A. No. 7662-VCP |
| OF FREDERIC B. ASCHE, JR. | ) | |

# MEMORANDUM OPINION

Dated Submitted: November 12, 2014
Date Decided: February 19, 2015

Matthew P. D'Emilio, Esq., COOCH AND TAYLOR, P.A., Wilmington, Delaware; *Attorneys for Petitioner PNC Bank, N.A.*

Neil R. Lapinski, Esq., GORDON FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; *Attorneys for Respondents Lisa Asche Mittnacht, E. Craig Asche, E. Vale Asche Elkins, Frederic B. Asche, III, and Franz M. Asche*.

Joel Friedlander, Esq., FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Eric Gambrell, Esq., AKIN, GUMP, STRAUSS, HAUER & FELD LLP, Dallas, Texas; *Attorneys for Interested Parties Texas Capital Bank, as Independent Executor of the Estate of Frederic B. Asche, Jr., and Mary Susan Barnhill, as Independent Executrix of the Estate of Sarah Patricia Asche.*

**PARSONS, Vice Chancellor.**

This matter arises out of a dispute between potential will beneficiaries. The will, being challenged elsewhere in terms of validity, exercised a power of appointment over a Delaware trust in favor of the testator's wife. Probate Court No. 2 of Dallas County, Texas (the "Texas Court"), admitted the will to probate without objection. To admit a will to probate, a Texas probate court must issue an order declaring that the will has the necessary formalities and the testator was "of sound mind" when he executed it—*i.e.*, an order that the will was valid. Texas, however, allows will contests challenging the will's validity for up to two years after entry of an initial order declaring the will valid. Currently, the Texas Court is holding proceedings that challenge the validity of the testator's will underlying this case. A jury verdict has declared the will invalid. Appeals from that verdict remain pending.

After a will is admitted to probate, a Texas probate court appoints an independent executor who oversees the administration of the estate. Under Texas law, an independent executor has the authority to gather the estate assets with minimal court supervision. Here, after the appointment of the executor of the testator's estate, but before the trust assets were distributed, the testator's wife passed away. The wife's executrix now requests that the trust assets be distributed to the wife's estate as was required under the testator's will that was admitted to probate. Under the wife's will, a university medical center would receive the trust assets. If, however, the Texas will contest ultimately invalidates the will, the testator's children may receive the trust assets instead. The Delaware trustee petitioned this Court under 10 *Del. C.* § 6504(2) for an order directing it

1

to distribute the trust assets to the wife's estate or, in the alternative, to be authorized to hold and invest those assets in accordance with its asset preservation policies.

On January 29, 2013, this issue was submitted to a Master in Chancery. She entered a Final Report on July 19, 2013. In her Final Report, the Master ordered the Delaware trustee to continue to hold the assets and to invest them in accordance with its asset preservation policies. The wife's executrix has filed exceptions to the Final Report. Under Court of Chancery Rule 144, I review the Master's determinations de novo. For the reasons that follow, I conclude that the trustee should refrain from distributing the trust assets until the Texas courts finally determine the validity of the will. While the will contest is pending, I authorize the trustee to invest the trust assets in accordance with its asset preservation policies.

## I.    BACKGROUND[1]

### A.    Facts

On August 28, 1961, Delaware resident Elizabeth Williams Vale ("Mrs. Vale") died. In her will, she established a trust for the benefit of her daughter, Grace Vale Asche ("Mrs. Asche"). Upon Mrs. Asche's death, the principal of the trust was to be divided into three equal shares for each of Mrs. Vale's grandchildren. Accordingly, when Mrs. Asche died on March 21, 2001, the principal was divided and placed into three trusts.[2]

---

[1]    The parties do not dispute the facts underlying the petitioner's claim and a more detailed version of those facts can be found in the Master's Report. *In the Matter of Vale for Asche*, 2013 WL 3804584, at *1-4 (Del. Ch. July 19, 2013).

[2]    Am. Pet. ¶ 2.

2

The portion of the trust that Mrs. Vale left to Frederic B. Asche, Jr. ("Tex")[3] is the subject of this litigation (the "Trust"). Under the terms of Mrs. Vale's will, Tex had the ability to direct the disposition of the Trust assets when he died through a general testamentary power of appointment.[4] If Tex failed to exercise his power of appointment, his issue would receive the Trust assets per stirpes.

Tex died on October 6, 2011. He was survived by five children—Lisa Asche Mittnacht, Frederic B. Asche, III, E. Craig Asche, Franz M. Asche, and E. Vale Asche Elkins (collectively, the "Default Beneficiaries)—and his wife, Sarah Patricia Asche ("Sallie"). On October 18, 2011, Sallie filed an application to admit Tex's Will to probate. On November 7, 2011, the Texas Court admitted Tex's Will to probate without objection (the "Texas Order"). The Texas Order stated that Tex's Will met the necessary formalities and that Tex was "of sound mind" when he executed his will. At the time the Texas Order was entered, however, there had been no contested proceedings about the will's validity. But, Texas probate law allows interested parties to challenge the validity of a will for up to two years after it is admitted to probate.[5]

---

[3] Because several of the relevant persons have the same last name, first names are used herein for clarity and without intending disrespect or familiarity.

[4] A general testamentary power of appointment means that Tex could direct the Trust assets to whomever he wanted by will.

[5] Tex. Estates Code Ann. § 256.204 (West 2015) (formerly Tex. Prob. Code Ann. § 93); *see also* Master's Report 4-5. During the course of the administration of Tex's estate, Texas recodified its probate code, effective January 1, 2014. The relevant code for this proceeding is the Texas Probate Code.

Under the terms of Tex's Will,[6] Tex exercised his power of appointment in favor of his wife, Sallie.[7] Sallie passed away on March 5, 2012. In a Texas probate court proceeding, Mary Susan Barnhill was appointed independent executrix of Sallie's estate (the "Executrix"). Under the terms of Sallie's will, Baylor University Medical Center of Dallas ultimately would receive the Trust assets. The Default Beneficiaries, however, are contesting the validity of Tex's Will in the Texas Court. If the Default Beneficiaries successfully invalidate Tex's Will, the purported exercise of the power of appointment in Tex's Will would be nullified, and, absent any other will by Tex to the contrary, the Default Beneficiaries would receive the Trust assets.

When the Executrix was appointed to administer Sallie's estate, she requested that PNC Bank, N.A. ("PNC") turn over the Trust assets pursuant to Tex's Will. Under the terms of the Trust, however, PNC and two individual co-trustees must act collectively as Trustee. At the time of Tex's death, Sallie and Tex's son Franz were the individual co-trustees. After Sallie's death, therefore, her position as co-trustee had to be filled to enable the Trustee to take any action. PNC made numerous requests of Franz to appoint

---

[6]    As admitted to probate, "Tex's Will" consisted of a will dated October 10, 2005, a first codicil dated June 5, 2007, and a second codicil dated September 9, 2011.

[7]    Master's Report 3.

4

a successor co-trustee. Instead, Franz resigned. Without co-trustees, PNC claims that it has been unable to take any action involving the Trust assets.[8]

## B. Procedural History

On June 28, 2012, PNC petitioned this Court pursuant to 10 *Del. C.* § 6504(2) for an order authorizing PNC to distribute the Trust assets to the Executrix. On August 1, 2012, the Default Beneficiaries challenged the validity of Tex's Will by filing a will contest in the Texas Court (generally, the "Will Contest"). Thereafter, PNC amended its petition asking, in the alternative, that this Court authorize PNC to invest the Trust assets without co-trustees and in conformance with PNC's policies for conservation and preservation of assets.[9]

On January 29, 2013, the issue was submitted to a Master in Chancery. The Master filed a Draft Report on April 29, 2013, to which both parties filed exceptions. After briefing on the exceptions, the Master filed her Final Report on July 19, 2013 (the "Master's Report"). On July 26, 2013, the Executrix filed exceptions to that report. After full briefing, I heard argument on the exceptions on July 16, 2014 (the "Argument"). Following the Argument, I requested comment on a further development

---

[8] This situation is particularly problematic from a financial standpoint because a third of the value of the Trust is invested in one publicly traded company. Master's Report 7.

[9] Am. Pet., Prayers for Relief, ¶¶ A-B.

in the Texas Court.[10] The parties submitted letters on that development in November 2014. On December 31, 2014, the Texas Court issued an order in the Will Contest invalidating Tex's Will,[11] and appeals currently are pending.[12]

In accordance with Rule 144, I have reviewed de novo the evidence and arguments presented with respect to the issues decided in the Master's Report. This Memorandum Opinion reflects my findings of fact and conclusions of law on the issues presented. For the reasons stated herein, I reach the same conclusion that the Master did.

## C.    Parties' Contentions

The Executrix makes three principal arguments in support of her contention that the Master erred. Those arguments are that: (1) not enforcing the Texas Order violated the Full Faith and Credit Clause because the Texas Order is a final judgment; (2) these

---

[10] JP Morgan filed an action in the Texas Court similar to the one PNC brought here under 10 *Del C.* § 6504(2), in which it asked the Texas Court for instructions on trust assets it held that arguably were affected by Tex's Will. Although the Texas Court heard arguments similar to those presented in this Court, it ultimately did not accept the Executrix's position. *Order Granting Mot. for Instructions*, No. Pr-13-667-2 (Probate Ct. No. 2 Dall. Cty. Sept. 9, 2014) (ordering the trustee to distribute funds pursuant to a trust instrument rather than Tex's Will).

[11] *In re: Estate of Frederic B. Asche, Jr.*, No. Pr-11-3533-2, at 2 (Probate Ct. No. 2 Dall. Cty. Dec. 31, 2014) ("IT IS THEREFORE ORDERED that the November 7, 2011 Order admitting [Tex's Will] to probate is hereby RESCINDED and SET ASIDE."(bold typeface omitted)).

[12] On January 22, 2015, Tex's executor filed its notice of appeal. *Notice of Appeal* at 1, *In re: Estate of Frederic B. Asche, Jr.*, No. Pr-11-3533-2 (Probate Ct. No. 2 Dall. Cty. Jan. 22, 2015). On January 30, 2015, the Executrix filed her notice of appeal. *Notice of Appeal* at 1, *In re: Estate of Frederic B. Asche, Jr.*, No. Pr-11-3533-2 (Probate Ct. No. 2 Dall. Cty. Jan. 30, 2015).

6

proceedings constitute an impermissible collateral attack on the Texas Order; and (3) not enforcing the Texas Order impedes the Executrix in violation of Texas law.

The Default Beneficiaries staunchly defend the Master's Report. Specifically, they contend that the Master correctly determined that: (1) the Texas Order is not final in the sense that it is entitled to full faith and credit; (2) this case is not a collateral attack; and (3) having the Trustee hold the Trust assets until after the Will Contest concludes does not impede the Executrix.

## II.     ANALYSIS

### A.     The Texas Order Is Not an Enforceable Final Judgment as to the Validity of Tex's Will.

The Executrix argues that Texas law provides that an order admitting a will to probate is an enforceable final judgment, which therefore is entitled to full faith and credit. The Full Faith and Credit Clause[13] requires state courts to give the same effect to foreign judgments as the state that rendered the judgment. Full faith and credit has long been understood to incorporate the concepts of res judicata and collateral estoppel.[14]

---

[13]     U.S. Const. art. IV § 1. There also is a related statue: the Full Faith and Credit Act ("FFCA"). 28 U.S.C. § 1738 (2012). The FFCA requires that "'all courts [must] treat a state court judgment with the same respect that it would receive in courts of the rendering state.'" *In re Nat'l Auto Credit, Inc. S'holders Litig.*, 2004 WL 1859825, at *2 (Del. Ch. Aug. 3, 2004) (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, (1996)).

[14]     *E.g.*, *Pyott v. La. Mun. Police Emps. Ret. Sys.*, 74 A.3d 612, 615 (Del. 2013). "Delaware courts have used the terms res judicata and claim preclusion interchangeably and distinguish them from collateral estoppel and issue preclusion. The *Restatement (Second) of Judgments* also contrasts claim preclusion and the narrower concept of issue preclusion. The section on Scope

Here, the Texas Order is not entitled to full faith and credit as to the validity of Tex's Will because the Texas Order does not reflect an actual adjudication of that issue. Accordingly, admitting the will to probate did not collaterally estop the Default Beneficiaries.[15] Similarly, the Default Beneficiaries were not precluded from filing the Will Contest because of res judicata.[16] If admitting Tex's Will to probate precluded future litigation over its validity, there could be no Will Contest. In fact, the Will Contest consisted of a new trial, in front of a jury, to determine the validity of Tex's Will.[17] Thus, because the Texas Order is not entitled to res judicata or collateral estoppel effect, the Texas Order is not entitled to full faith and credit in this case as an adjudication of the validity of Tex's Will.

---

states: 'The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so. A related but narrower principle—that one who has actually litigated an issue should not be allowed to relitigate it—underlies the issue of issue preclusion.'" *Advanced Litig., LLC v. Herzka*, 2006 WL 4782445, at *8 n.54 (Del. Ch. Aug. 10, 2006); *see also Hendry v. Hendry*, 2006 WL 1565254, at *8 n.77 (Del. Ch. May 26, 2006).

[15] *Cf. Thompson v. Deloitte & Touche, L.L.P.*, 902 S.W.2d 13, 16 (Tex. App. 1995) (concluding that the statutory period for contesting the will had run and the order admitting the will to probate was res judicata); *Martinez v. Arredondo*, 406 S.W.2d 513, 514 (Tex. Civ. App. 1966) (holding that a will contest operates as res judicata against a second will contest).

[16] *In re Estate of Blevins*, 202 S.W.3d 326, 329 (Tex. App. 2006) (concluding that even if an interested party is served with notice of the proceeding to admit the will to probate, he is not precluded from filing a will contest within the two-year statute of limitations).

[17] *See* Tex. Estates Code Ann. § 55.002 (West 2015) (formerly Tex. Prob. Code Ann. § 21) ("In a contested probate or mental illness proceeding in a probate court, a party is entitled to a jury trial as in other civil actions.").

8

The Executrix cites *In re Cochran's Estate*[18] for the proposition that "Delaware courts have denied efforts to freeze assets pending determination of a will contest."[19]  In *In re Cochran's Estate*, John Cochran devised a life estate to his wife and the remainder to his children who survived him.  The will also provided that if any of his children did not survive him, the child's issue would receive the property in the child's place.[20]  When Cochran executed his will, one of his six children had died leaving behind four children.[21]  This Court held that because Cochran's child had died with issue before Cochran executed his will, Cochran would have had to name the child's issue specifically in his will to devise property to them effectively.[22]  After determining the parties' rights under the will, the Court ordered the estate partitioned and denied a motion to stay.  In denying a stay, the Court held that, "A legal question based on undisputed facts has been properly raised in a tribunal competent to decide it, and it is not ignoring or trespassing on the functions and powers of other courts for this court to decide the question."[23]

Thus, *Cochran's Estate* involved a situation where this Court had jurisdiction both to interpret the will and to order the partition.  Here, in contrast, this Court's role simply

---

[18]     85 A. 1070 (Del. Ch. 1913).

[19]     Executrix's Opening Br. 10.

[20]     *Cochran's Estate*, 85 A. at 1070-71.

[21]     *Id.* at 1071.

[22]     *Id.* at 1073.

[23]     *Id.*

9

is to instruct PNC what it should do. The ultimate content of those instructions depends on how the Texas courts finally resolve the Will Contest. Unlike that proceeding, the litigation before this Court does not involve an adjudication of the parties' rights under Tex's Will. Thus, the decision in *Cochran's Estate* is unhelpful to the Executrix's argument. Indeed, under the reasoning of *Cochran's Estate*, this Court would be trespassing on the function of the Texas courts if it were to authorize the Trustee to distribute the Trust assets while the issue of the validity of Tex's Will, which affects the rights to those assets, is being litigated in the Texas courts.[24]

### B. This Proceeding Is Not a Collateral Attack.

Next, the Executrix argues that failing to instruct PNC to transfer the Trust assets to her constitutes a collateral attack upon the Texas Order. A collateral attack is an attempt to "avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial."[25]

---

[24] *See Sibert v. Pettyjohn*, 2009 WL 5150288, at *1 (Del. Ch. Dec. 15, 2009) (granting stay of a partition action while the family court determined title to the property in a divorce proceeding).

[25] *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1487 (10th Cir. 1995) (citation omitted) (internal quotation marks omitted); *see also State v. Kamalski,* 429 A.2d 1315, 1320 (Del. Super. 1981) (noting that only judgments by courts lacking jurisdiction may be collaterally attacked).

The Executrix cites *Anonymous v. Anonymous*[26] as support for its assertion that this Court cannot decide the validity of another state's order because it would be an impermissible collateral attack. In *Anonymous*, a husband sought an annulment in Delaware on the grounds that his wife still was married to her first husband because a Texas order divorcing them purportedly was invalid.[27] The court held, "Relief on this ground must be obtained, under the law of [Texas], in some direct proceeding, as by motion, appeal or action in equity."[28]

The decision in *Anonymous v. Anonymous* is distinguishable, however, because this Court is not being asked to avoid, defeat, evade, or deny the force and effect of the Texas Order regarding an issue as to which that order would be dispositive under Texas law. The Default Beneficiaries, like the husband in *Anonymous*, must go to Texas to challenge the validity of the Texas Order. In fact, as regards the validity of Tex's Will, the Default Beneficiaries have done that in the Will Contest. What is at issue here, and not addressed in *Anonymous*, is what happens to disputed property while a party directly attacks a foreign order in that foreign jurisdiction. The Executrix reads *Anonymous* as precluding any court except a Texas court from preventing the distribution of disputed property while such a direct attack is pending. Under that interpretation, only a Texas

---

[26] 85 A.2d 706 (Del. Super. 1951), *aff'd sub nom. Du Pont v. Du Pont*, 90 A.2d 468 (Del. 1952).

[27] *Id.* at 711.

[28] *Id.* at 713.

court could have enjoined the wife in the *Anonymous* case from disposing of marital property while a direct attack on the divorce order was pending. Consistent with the conclusion the Master reached in her report,[29] I am convinced that the prohibition on collateral attacks is not so broad as to produce that result.

**C.     This Proceeding Does Not Impede the Executrix in Violation of Texas Law.**

The Executrix also argues that failing to distribute the Trust assets to Sallie's estate impedes the Executrix in violation of Texas law. The Executrix asserts that in this regard the Master's holding interferes with the Texas Legislature's scheme for adjudicating wills, which limits judicial oversight of independent executors.

Under Texas probate law, Section 145(h) provides:

> When an independent administration has been created, and the order appointing an independent executor has been entered by the county court, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the county court or an affidavit in lieu of the inventory, appraisement, and list of claims has been filed by the executor, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court.[30]

---

[29]    "Taken to its logical conclusion, the Executrix's argument would mean that if an independent executor attempts to gather an asset, the ownership of which is disputed, no court in the land can enter an order respecting that asset, other than the court that appointed the executor. . . . [S]uch a conclusion would be both absurd and inefficient." Master's Report 16-17.

[30]    Tex. Estates Code Ann. § 402.001 (West 2015) (formerly Tex. Prob. Code Ann. § 145(h)).

12

Section 145 consistently has been interpreted as limiting judicial oversight to minimize the costs of probating wills.[31] Under Section 145, the independent executor is vested with the power to act as if he was acting pursuant to an order of the court.[32] Furthermore, the Executrix argues, "It is [her] power and duty to administer the assets of the Estate, and it is not the province of the court to impede the Executrix of this obligation."[33] Texas Probate Code Section 37, in relevant part, provides:

> [U]pon the issuance of letters testamentary or of administration upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator . . . and he shall recover possession of and hold such estate in trust to be disposed of in accordance with the law.[34]

Texas courts have interpreted Section 37 as vesting the independent executor with not just a right, but a duty to gather the assets of the estate.[35]

---

[31] *See, e.g.*, *Corpus Christi Bank & Trust v. Alice Nat'l Bank*, 444 S.W.2d 632, 634-35 (Tex. 1969) ("[The Texas Supreme Court] has recognized this rationale in saying that the general intent of Sec. 145 of the Probate Code is to free the 'independent executor' from the control of the court, except where the Code specifically and explicitly provides otherwise." (citation omitted) (internal quotation marks omitted)).

[32] *Smith v. Hodges*, 294 S.W.3d 774, 778 (Tex. App. 2009) ("An independent executor may, without order of the probate court, do any act that an ordinary executor or administrator could do with or under an order of the probate court.").

[33] Executrix's Opening Br. 14-15.

[34] Tex. Estates Code Ann. § 101.003 (West 2015) (formerly Tex. Prob. Code Ann. § 37).

[35] *Bloom v. Bear*, 706 S.W.2d 146, 147 (Tex. App. 1986).

The parties did not cite any case, however, discussing how Section 37—and therefore the Executrix's right to gather estate assets—applies in connection with a will contest, as exists in this case. The Court's research has not revealed any such case either.

Here, the dispute over whether the Trust assets are part of Sallie's estate turns on the outcome of the Will Contest. Moreover, Texas probate law appears to provide specifically and explicitly for will contests in the county court within two years after the entry of an order, such as the Texas Order. In this case, the Default Beneficiaries are litigating in Texas whether Tex's Will is valid, a necessary precondition to the Trust assets becoming part of Sallie's estate. In the absence of a final determination as to whether the Trust assets were in Sallie's estate when she died, I am not persuaded that the Executrix is vested with the power to gather the disputed Trust assets. PNC, therefore, should hold the assets until the Texas courts determine who is entitled to those assets.

Similarly, I conclude that instructing PNC not to distribute the Trust assets to Sallie's estate is neither a collateral attack on the order appointing the Executrix nor a violation of the Full Faith and Credit Clause. The Executrix's right to the Trust assets depends on whether they are part of Sallie's estate.[36] Until the Texas courts determine the Will Contest, and through it, reach a final resolution as to whether Tex validly exercised his power of appointment, the Executrix does not have an enforceable right to the disputed Trust assets because they may not be part of Sallie's estate.

---

[36] *See* Tex. Prob. Code Ann. § 37 (West 2013).

## D.      The Executrix's Miscellaneous Arguments

The Executrix also predicts dire consequences if this Court confirms the Master's Report. She argues that if wills are not enforceable until after they are entitled to full faith and credit, then no executor may rely on the initial probate order until after a will contest or after the statute of limitations has run, which could take years. My ruling in this Memorandum Opinion, however, is not likely to impede an executor of a Texas estate from gathering estate assets pursuant to Section 37. It is for the executor to decide whether to distribute assets when he knows a potential dispute is on the horizon. And, while the Executrix argues that failing to distribute the Trust assets here will create uncertainty for executors in the future, that outcome seems unlikely. Texas law makes clear that an executor has the right to gather assets in the testator's estate at the time of her death. An executor's right to gather assets is not absolute, however. If questions exist as to whether certain assets were part of the testator's estate when she died, and the rights to those assets are the subject of an ongoing will contest, the executor's right to gather those assets may be limited.[37]

---

[37]     Here, if Tex's Will is invalid, his purported exercise therein of his power of appointment would be ineffective, and the Trust would not be part of Sallie's estate. Because the Texas courts currently are determining that issue in the context of deciding whether Tex's Will is valid, I consider it inappropriate to distribute the Trust assets to the Executrix at this time. The Executrix repeatedly argues that the Texas Order already provides that the Trust assets are part of the estate, but as discussed *supra*, that order did not actually adjudicate the validity of Tex's Will.

The Executrix also argues that the Master erred in considering potential prejudice to the Default Beneficiaries. According to the Executrix, it is "wholly irrelevant to the determination of the matters in this case what the executrix will or might do with the Trust assets upon distribution."[38] This position comports with the Executrix's overall theory in this litigation, which is: (1) the Texas Order is a final judgment; (2) under the Texas Order, the Trust assets go to Sallie's estate; (3) the Texas Order takes precedence over the Will Contest in terms of estate administration; and (4) refusing to enforce the Texas Order would violate the Full Faith and Credit Clause, inject unnecessary uncertainty into the Texas probate system, and generally undermine the independence of executors and, possibly, the sovereignty of the state of Texas.

Notwithstanding the Executrix's predictions regarding the adverse effects of the Master's Report—or any decision upholding it—it is the Executrix's argument that ignores real world effects. As the Master correctly observed, the circumstances of this case are unusual.[39] Not surprisingly, therefore, neither party has identified any case law squarely addressing this specific situation. Instead, the parties presented arguments relying on relatively strained analogies, often supported by decades-old case law.

Having considered the relevant circumstances and the competing arguments, I find the Executrix's position—that the Will Contest is irrelevant to the resolution of this

---

[38]     Executrix's Opening Br. 14.

[39]     Master's Report 17 ("This case arises under the very unusual circumstances in which an action contesting the probate of a will in one estate impacts whether a particular piece of property is the asset of a second estate.").

case—untenable. The merits of the Will Contest had not been resolved when the Executrix argued before the Master. By the time of the Argument before me, a Texas jury had found Tex's Will invalid, but the Executrix still maintained that the Will Contest should not affect the outcome here.[40] Furthermore, as the parties discussed in their November letters to this Court, the Texas Court recently issued a decision that itself undercuts the Executrix's notion that the Texas Order was entitled to full faith and credit.[41] Notably, the same arguments pressed by the Executrix in this case were presented to the Texas Court in the other action and that court—which obviously is more versed in Texas probate law—found those arguments unpersuasive. Even in light of these circumstances, the Executrix steadfastly maintains that the Will Contest is irrelevant to the issue before me. In the absence of persuasive authority to the contrary, however, I find that it would be illogical and inequitable for this Court to order distribution of the Trust assets to Sallie's estate at this time. Accordingly, I hold that the Master did not err in considering the practical effect of the Executrix's arguments.

### III.    CONCLUSION

For the foregoing reasons, I direct PNC to hold the Trust assets until after a final judgment as to which all rights of appeal have been exhausted exists in the Will Contest.

---

[40]    *See Final Judgment and Order Admitting Will to Probate and Authorizing Letters Testamentary* at 1, No. Pr-11-3533-2 (Probate Ct. No. 2 Dall. Cty. Dec. 31, 2014); *see also* Arg. Tr. 6 ("The point is is [sic] this verdict has no effect on the status quo as we stand here today."). The jury verdict was entered on April 16, 2014; the Argument before this Court took place on July 16, 2014.

[41]    *See supra* note 10 and accompanying text.

In the interim, I authorize PNC to invest the Trust assets consistent with its policies for asset preservation and conservation.

**IT IS SO ORDERED**.